(119 App. Div. 666)

### THOMPSON v. PRUDENTIAL INS. CO. OF AMERICA.

(Supreme Court, Appellate Division, Fourth Department.    May 1, 1907.)

INSURANCE—LIFE POLICY—PAYMENT—TO WHOM MADE.

> Where a policy insuring a boy's life named no beneficiary, but stipulated payment should be made to insured's administrator, etc., provided the insurer might pay any relative by blood, connection by marriage, or to any other person appearing to the insurer to be equitably entitled thereto, for having incurred expense in any way for insured, for his burial, or any other purpose, payment was properly made to a nonrelative who had kept the insured for several years under an agreement to clothe and educate him and to receive his services until he became of age, who had paid the premiums and insured's funeral expense, though insured had left him, running away when 18 years old, a few months before he died at his mother's house; such payment having been made before the mother was appointed administratrix, and it not appearing any relative knew of the insurance prior to the payment, or that defendant knew of any relatives who might claim an interest in the money.

Appeal from Trial Term, Erie County.

Action by Emeline A. Thompson, administratrix, against the Prudential Insurance Company of America. From a judgment for plaintiff, defendant appeals. Reversed, and new trial granted.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

B. E. Farnham, for appellant.
R. E. Congdon, for respondent.

ROBSON, J. Plaintiff alleges that she, as administratrix of the estate of her deceased son, prosecutes this action to recover of defendant the amount for which the life of deceased was insured by defendant. At the close of the trial the court directed a verdict for plaintiff.

The policy, issued November 2, 1903, was for the sum of $188.60, and provided for the payment of weekly premiums of 10 cents each. At that time the assured, as stated in the policy, represented that he would be 16 at his next birthday. He had for some years prior to that time lived with Robert L. Newton, who seems to have taken the lad, under an arrangement with his grandmother, to bring up until he should become 21 years of age, with the understanding that he should be clothed and educated, and that he should in return complete the term agreed upon. The insurance was obtained at Newton's suggestion, and he in fact paid all the premiums thereon. The assured continued to live with Newton after the policy was taken out

down to about May, 1905, when, as Newton testifies, he ran away
The reason of his leaving Newton at that time and before the term
agreed upon had been completed was one for which Newton was not
in any way responsible. During the time the assured lived with
Newton, he was furnished board, clothing, and necessary school
books, and Newton seems to have carried out in complete detail his
part of the contract; and, though the boy was never formally adopted,
nor indentured, up to the time he left, no fault could be found with his
performance of the contract or understanding pursuant to which
Newton agreed to take him. Neither the mother of assured nor any
other member of his family was at any trouble or expense for his
care, maintenance, or support during the time he lived with Newton.
On September 11, 1905, within four or five months after leaving New-
ton, he died at the home of his mother, the plaintiff in this action,
after an illness, which does not seem to have been serious until a
few days before its fatal termination. She has paid doctors' and
nurses' bills of small amount, and made the contract with the under-
taker for her son's burial; but this latter bill, amounting to $103,
was in fact paid by Newton. No beneficiary was specifically named in
the policy, and we quote the material part of its provisions relating to
payment of the benefit accruing thereunder:

"The amount of benefit provided in the schedule on the first page hereof,
and any additions thereto, shall be paid by the company at its home office in
the city of Newark, New Jersey, unto the executors, administrators or assigns
of the insured, unless settlement shall be made as provided in article second
under the head of 'Provisions' below, immediately upon acceptance of satis-
factory proof of the death of the insured during the continuance of this policy.

"Provisions.

"(2) Facility of Payment. The company may make any payment provided
for in this policy to any relative by blood or connection by marriage of the
insured, or to any other person appearing to said company to be equitably enti-
tled to the same by reason of having incurred expense in any way on behalf of
the insured, for his or her burial or for any other purpose, and the produc-
tion by the company of a receipt signed by any or either of said persons or of
other sufficient proof of such payment to any or either of them shall be con-
clusive evidence that such benefits have been paid to the person or persons
entitled thereto, and that all claims under this policy have been fully satis-
fied."

In the case of Wokal v. Belsky, 53 App. Div. 167, 65 N. Y. Supp.
815, the court was called upon to consider a provision in a policy of
insurance similar to that we have just quoted, and took occasion to ex-
press the purpose of making such a provision a part of the agree-
ment thereby expressed, as follows:

"Such a clause in a policy is inserted for the protection of the company, to
enable it in industrial policies, where, as here, the amount payable is small,
to discharge its obligation by payment to any one of the classes designated
without requiring administration. * * * The only effect of the clause is to
provide the company with a defense in case it has paid thereunder."

Apparently assuming to exercise its reserved right to determine to
which individual, within the designated classes of persons referred to
in provision 2, above quoted, early in October, 1905, defendant paid
to Robert L. Newton the amount of benefit called for by this policy

of insurance; and we are warranted in assuming that the company determined he was the person "equitably entitled to the same by reason of having incurred expense on behalf of the insured." At the time this payment was made, no administrator of the estate of deceased had been appointed, and there is no evidence that plaintiff or any other member of his family then, or at any time prior thereto, had even a suspicion of the existence of this insurance; and there is no evidence that any information had come to defendant that deceased had relatives, who might, if opportunity served, claim an interest in the insurance moneys. The good faith of defendant in making the payment to Newton is not questioned, which fact alone is sufficient to distinguish the present case from the case of Shea v. U. S. Industrial Ins. Co., 23 App. Div. 53, 48 N. Y. Supp. 548, upon which plaintiff largely relies. It seems to be, and under the authorities must necessarily be conceded by plaintiff, that, if payment has been made by defendant, prior to notice of her claim as administratrix, ·to a person chosen from one of the classes designated in provision 2, above quoted, in the due exercise of the discretionary power of selection reserved to it by that provision, that fact would be a complete defense to this action. Wokal v. Belsky, supra; Thomas v. Pru. Ins. Co., 24 Atl. 82, 148 Pa. 594; Bradley v. Same, 72 N. E. 989, 187 Mass. 226. She does, however, claim that Newton, to whom payment was made, has not been shown to be a person upon whom defendant's choice might fall, because, as she urges, he was not within the range of selection reserved by the terms of the policy; and, even if the facts now appearing would seem to entitle him to a position within the circle of choice, those facts were not known to defendant when payment was made to him, and therefore defendant's determination that he was a person equitably entitled to payment could not have been based upon actual knowledge, and must have resulted from some other consideration.

It appears that Newton was not a relative by blood or a connection by marriage of deceased; and whatever right he had to ask of defendant payment of this insurance to him is dependent upon defendant's recognition of his claim that he was a person equitably entitled to it, because he had incurred expense for the deceased either for his burial, or in some other manner. We do not agree with plaintiff's claim, which is strenuously urged upon our attention, that the only expenses, other than those for burial, which can be considered by defendant as clothing a person with a claim to be considered as equitably entitled to the insurance moneys, are those connected with the last sickness of the assured, for the language of the quoted provision refers to expenses for the burial, and also to expenses for any other purpose. This language is broad and comprehensive enough to include among the expenses which defendant could properly consider as having been incurred by Newton for deceased, not only his payment of premiums on the policy, but also a portion at least of the cost of educating and maintaining deceased. This latter expense had been but meagerly reimbursed to him, when deceased, at the age of 18, left him, and not in the full measure contemplated by the understanding under which Newton took deceased that he was to remain

until he was 21. It should be observed that we are now concerned only with facts, which, under the circumstances, might appear to disclose the equitable rights of Newton, which might easily be greater than those which are of a character strictly legal. It is true he had no legal right to compel the lad's return after he ran away; but it is also true that, having fed, clothed, and educated him from early youth till the age at which his services were doubtless expected to be, and would have been, some repayment for previous expense, defendant might well have determined that Newton was equitably entitled to have this expense for which he had received no adequate return considered as an expense incurred for deceased. The evidence also conclusively shows that Newton had obligated himself to pay the funeral expenses prior to receiving the insurance moneys, and that he in fact paid them at, or immediately after, the time these moneys came to his possession.

Under the terms of the policy, plaintiff, as administratrix, could recover on the policy only in the event defendant had not already paid the insurance to some person in pursuance of provision 2, above quoted. Before receiving any notice of plaintiff's appointment or of any claim in her behalf to these moneys, defendant had paid the amount of insurance to one, who, as it claims, is equitably entitled thereto by reason of having incurred expense not only for the burial of, but also in other ways for, the deceased. We do not think it material to determine whether defendant's payment to Newton as a person equitably entitled thereto was based upon actual knowledge of all the facts which together would, as defendant now urges, establish his equitable right. Defendant selected Newton as the person to whom payment should be made, and we hold that defendant's action was proper, regardless of whether all, or only one, or more, of the different grounds, upon which an equitable claim in his behalf could have been predicated, furnished the controlling reason for defendant's decision that he was equitably entitled to the money.

The judgment and order appealed from should be reversed, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed, and new trial granted, with costs to appellant to abide the event. All concur.